UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL W. GERARD,⟩
⟩
        Plaintiff,⟩
⟩
v.⟩  Case No. 4:16 CV 13 ACL
⟩
NANCY A. BERRYHILL,[1]⟩
Acting Commissioner of Social Security,⟩
⟩
        Defendant.⟩

## MEMORANDUM AND ORDER

Plaintiff Michael W. Gerard brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Gerard's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

# I. Procedural History

Gerard protectively filed his application for SSI on October 15, 2012. (Tr. 236.) He alleged that he became disabled on October 16, 2002,[2] due to problems with his right knee, right elbow, shoulder, back, and feet; chronic gout; enlarged prostate; and high blood pressure. (Tr. 236, 257.) Gerard's claims were denied initially. (Tr. 142.) Following an administrative hearing, Gerard's claims were denied in a written opinion by an ALJ, dated September 26, 2014. (Tr. 14-22.) Gerard then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on December 2, 2015. (Tr. 6, 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Gerard first claims that the ALJ "failed to properly evaluate opinion evidence." (Doc. 18 at 3.) Gerard next argues that the ALJ "failed to obtain evidence from a vocational expert." *Id.* at 11.

# II. The ALJ's Determination

The ALJ first stated that Gerard had not engaged in substantial gainful activity since his alleged onset date of October 15, 2012. (Tr. 16.)

The ALJ concluded that Gerard had the following severe impairments: degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; gout; arthritic changes

---

[2]Although Gerard alleged a disability onset date of October 16, 2002, the ALJ considered whether Gerard was disabled beginning on his application date of October 15, 2012 (Tr. 16), because SSI is not payable prior to the application date. *See* 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.")

to both feet; and right elbow heterotopic ossification.[3]   *Id.*   The ALJ found that Gerard did not

have an impairment or combination of impairments that meets or equals in severity the

requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 17.)

As to Gerard's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform the full range of light work as defined in 20 CFR
> 416.967(b).

*Id.*

The ALJ found that Gerard's allegations regarding his limitations were not entirely

credible.   (Tr. 18.)   In determining Gerard's RFC, the ALJ indicated that he was assigning "little

weight" to the opinion of treating physician Ana Danielyan, M.D.   (Tr. 20.)   The ALJ assigned

"some weight" to the opinion of state agency medical consultant Kenneth R. Smith, M.D.   *Id.*

The ALJ further found that Gerard has no past relevant work.   *Id.*   The ALJ applied the

Medical-Vocational Guidelines to find that there were jobs that exist in significant numbers in the

national economy that Gerard can perform.   (Tr. 21.)   The ALJ therefore concluded that Gerard

has not been under a disability, as defined in the Social Security Act, since October 15, 2012, the

date the application was filed.

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income
> protectively filed on October 15, 2012, the claimant is not disabled
> under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 22.)

---

[3]The presence of bone in soft tissue where bone typically does not exist.   *Stedman's Medical Dictionary*, 632 (28th Ed. 2006).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the eCourt must review the entire administrative record and consider:

1.   The credibility findings made by the ALJ.

2.   The plaintiff's vocational factors.

3.   The medical evidence from treating and consulting physicians.

4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.   Any corroboration by third parties of the plaintiff's impairments.

6.   The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).   *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached.   *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir.

2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.  *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."  20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).  The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:  activities of daily living, social functioning, concentration, and persistence or pace.  *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).  Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.  *See id.*  Next, the Commissioner must determine the severity of the impairment based on those ratings.  *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.  *See* 20 C.F.R. §§

404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical

findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the

appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does

not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20

C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

**1.      Opinion Evidence and RFC**

Gerard argues that the ALJ erred in discrediting the opinion of treating physician Dr.

Danielyan, and in relying on the opinion of non-examining state agency physician Dr. Smith in

determining Gerard's RFC.   Gerard also argues that the ALJ erred in failing to obtain evidence

from a vocational expert.   The undersigned will discuss these claims in turn.

On August 27, 2013, Dr. Danielyan completed a Medical Assessment of Ability to do

Work-Related Activities (Physical).   (Tr. 347-48.)   Dr. Danielyan indicated that Gerard was

diagnosed with cervical spinal degenerative joint disease.   (Tr. 347.)   Dr. Danielyan expressed

the opinion that Gerard could lift or carry seven pounds; needs to change positions and rest every

hour for ten to twenty minutes; could never perform postural activities; was limited in his ability to

reach, handle, push, and pull; and must avoid heights, vibrations, and machinery.   (Tr. 347-48.)

Dr. Danielyan stated that Gerard was unable to perform sustained competitive full-time work

because "he is in pain even without any employment/work," and he rests and changes positions

hourly.   (Tr. 347.)

On June 11, 2014, Dr. Danielyan completed a second assessment, in which she listed

Gerard's diagnoses as cervical spine degenerative joint disease and spinal stenosis.   (Tr. 373.)

She stated that Gerard's symptoms included constant pain in his neck that radiates to his arms, and

tingling/numbness in his hands. *Id.* Dr. Danielyan indicated that Gerard had the same limitations as she had previously found, and that his condition still prevented him from engaging in any kind of sustained full-time competitive employment. *Id.*

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). Opinions from medical sources who have treated a claimant typically receive more weight than opinions from one-time examiners or non-examining sources. *See* 20 C.F.R. § 416.927(c)(1)–(2). However, the rule is not absolute; a treating physician's opinion may be disregarded in favor of other opinions if it does not find support in the record. *See Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007). The treating physician's opinion should be given controlling weight when it is supported by medically acceptable laboratory and diagnostic techniques and it must be consistent with other substantial evidence in the case record. *Hacker v. Barnhart*, 459 F.3d 935, 937 (8th Cir. 2006). *See also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (listing "[s]upportability" as a factor to be considered when weighing medical opinions). Inconsistencies may diminish or eliminate weight given to opinions. *Hacker*, 459 F.3d at 937. *See also Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (holding that a treating physician's opinion "may have 'limited weight if it provides conclusory statements only, or is inconsistent with the record'") (quoting *Samons v. Astrue,* 497 F.3d 813, 818 (8th Cir. 2007)). An ALJ "may discount or even disregard the opinion ... where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)).

If an ALJ declines to ascribe controlling weight to the treating physician's opinion, she must consider the following factors in determining the appropriate weight: length and frequency of the treatment relationship; nature and extent of the treatment relationship; evidence provided by the source in support of the opinion; consistency of the opinion with the record as a whole; and the source's level of specialization.   20 C.F.R. §§ 404.1527(c); 416.927(c).   Whether the ALJ grants the treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation."   *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005).   "Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand."   *Reed v. Barnhart*, 399 F. Supp.2d 1187, 1194 (E.D. Mo. 2004).

The ALJ stated that he was assigning "little weight" to Dr. Danielyan's opinion for the following reasons:

> [D]uring the period at issue, the doctor noted [Gerard] was negative for decreased mobility, joint pain, muscle spasm, muscular atrophy, musculoskeletal tenderness and weakness, normal gait, and the doctor cited to normal mobility and curvature in his cervical, thoracic, and lumbar spine, with no tenderness and a full range of motion with no joint deformity (Exhibit D6F/4-9).   Moreover, the opinion was inconsistent with the doctor's other findings noted above which were fairly benign from his treatment visits.   The undersigned accords no weight to the portion of the opinions that find the claimant disabled since that is an opinion reserved to the Commissioner.

(Tr. 20.)

Dr. Danielyan's treatment notes are summarized as follows:

On *April 13, 2012*, Gerard presented with complaints of lower back pain that radiated to the right thigh.   (Tr. 306.)   He indicated that trauma occurred due to a fall he sustained at work in 1980.   *Id.*   Gerard's symptoms were aggravated by ascending and descending stairs, bending, changing positions, daily activities, extension, flexion, lifting, and lying/rest.   *Id.*   Gerard also

reported hyperplasia of prostate, which was being followed by a urologist and was controlled on medications; dizziness that was improving; alcohol abuse; and hypertension. *Id.* Upon physical examination, Dr. Danielyan noted lumbar spine tenderness, and severe pain with motion. (Tr. 307.) Dr. Danielyan diagnosed Gerard with benign hypertension, hyperplasia of prostate, alcohol dependence, and dizziness. (Tr. 308.)

On *December 14, 2012*, Gerard complained of bilateral posterior neck pain, which radiated to the right upper arm, right elbow, right forearm, right hand and right fifth finger. (Tr. 336.) He also reported occasional right upper extremity weakness. *Id.* Gerard's pain was aggravated by turning his head and twisting. *Id.* Upon examination, Dr. Danielyan noted moderate pain with motion, no sensory loss, no motor weakness, intact balance and gait, and intact coordination. (Tr. 338.) This December 2012 visit was the first time Dr. Danielyan diagnosed Gerard with intervertebral disc disorder with myelopathy,[4] cervical. *Id.* She referred Gerard to a pain management physician, and ordered an MRI of the cervical spine. *Id.*

On *January 18, 2013*, Gerard complained of worsened neck pain. (Tr. 349.) Dr. Danielyan did not provide physical exam findings, but in the "Review of Systems" section, she noted numbness but no decreased mobility, joint pain, muscle spasms, muscular atrophy, musculo-skeletal tenderness, or weakness. (Tr. 349-50.) Dr. Danielyan diagnosed Gerard with intervertebral disc disorder with myelopathy, cervical; and prescribed Hydrocodone-Acetamino-phen[5] for pain. (Tr. 350.)

On *May 17, 2013*, Gerard complained of neck pain and left big toe pain. (Tr. 352.) Upon examination, Gerard's gait was normal, he had no spinal tenderness, and normal mobility and

---

[4]Disorder of the spinal cord. *Stedman's* at 1270.
[5]Hydrocodone-Acetaminophen, or Vicodin, is indicated for the relief of moderate to moderately severe pain. *See Physician's Desk Reference ("PDR")*, 1918 (70th Ed. 2016).

curvature of the spine. (Tr. 354.) Dr. Danielyan noted mild gouty arthritis of the left big toe. *Id.* Dr. Danielyan diagnosed Gerard with intervertebral disc disorder with myelopathy, cervical; and acute gouty arthropathy. *Id.* She added Flexeril.[6] *Id.*

On *July 25, 2013*, Gerard complained of pain in the lower back, upper back, bilateral elbow, bilateral knee and neck; and depression. (Tr. 356.) Dr. Danielyan diagnosed Gerard with osteoarthritis; intervertebral disc disorder with myelopathy, cervical; depression; and pain in joint, multiple sites. (Tr. 357.)

On *August 29, 2013*, Gerard complained of depression, neck pain, and back pain. (Tr. 359.) Dr. Danielyan's assessment was depression; pain in joint, multiple sites; intervertebral disc disorder with myelopathy, cervical; and back pain with radiation, unspecified. (Tr. 360.)

On *January 30, 2014*, Gerard presented with complaints of dysuria. (Tr. 361.) Dr. Danielyan's assessment was dysuria,[7] depression, and back pain with radiation. (Tr. 362.)

On *March 27, 2014*, Gerard complained of increased neck pain after having fallen at home three weeks earlier. (Tr. 364.) He also reported joint pain, numbness and tingling. *Id.* Upon examination, Gerard's gait was non-antalgic and he was able to heel-and-toe-walk normally; and no spinal tenderness was noted. (Tr. 366.) Gerard's spinal range of motion was as follows: external rotation was limited to 45 degrees, extension was 55 degrees, flexion was 45 degrees, right lateral flexion was 40 degrees, left lateral flexion was 40 degrees, right rogation was 70 degrees, and left rotation was 70 degrees.[8] *Id.* Dr. Danielyan indicated that Gerard had no restriction on flexion, extension, lateral bending, or lateral rotation. *Id.* Finally, Dr. Danielyan

---

[6]Flexeril is indicated for the treatment of muscle spasms. *See* WebMD, http://www.webmd.com/drugs (last visited March 15, 2017).
[7]Difficulty or pain in urination. *Stedman's* at 604.
[8]Dr. Danielyan did not set out the normal range of motion values. Dr. Danielyan also did not specify the area of the spine she was testing, although it appears that she was referring to the cervical spine.

noted that Gerard had severe pain with motion of the cervical spine. *Id.* She diagnosed Gerard with cervical myelopathy and cervicalgia. (Tr. 367.)

The ALJ accurately pointed out that Dr. Danielyan's findings in January 2013 and May 2013 were normal. Specifically, on January 18, 2013, Dr. Danielyan noted numbness but no decreased mobility, joint pain, muscle spasms, muscular atrophy, musculoskeletal tenderness, or weakness. (Tr. 349-50.) On Gerard's May 17, 2013 examination, Dr. Danielyan noted that his gait was normal, he had no spinal tenderness, and normal mobility and curvature of the spine. (Tr. 354.) Dr. Danielyan also noted Gerard had a normal gait in December 2012 and May 2014. (Tr. 338, 366.) The ALJ found that over the two years of treatment from Dr. Danielyan, the treatment was "essentially routine and/or conservative in nature" and Dr. Danielyan "did not cite to limitations that were indicative of a disabled individual." Gerard was treated by Dr. Danielyan on a total of seven occasions which generally resulted in her prescribing medications to Gerard, as well as discussing his diet and exercise. (Tr. 335, 338, 350, 354, 357, 360, 367.) The only treatment referral was for pain management on December 14, 2012. (Tr. 338.)

A treating physician's opinion can be discounted when it is inconsistent with the physician's treatment notes. *See Davidson v. Astrue*, 501 F.3d 987, 990-91 (8th Cir. 2007) (affirming an ALJ's decision to discount a physician's later opinion on a plaintiff's conditions where the physician's "treatment notes, recorded over the course of two years, contain few hints of the serious physical limitations that [the physician] would later attribute to" the plaintiff).

Additionally, the ALJ accurately noted that Dr. Danielyan's opinion that Gerard is unable to work is entitled to no weight, as this is an issue reserved to the Commissioner. *See Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (noting that the ultimate disability determination is reserved to the ALJ); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("Treating physicians'

opinions are not medical opinions that should be credited when they simply state that a claimant cannot be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner."). Furthermore, although medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2).

The undersigned finds that the ALJ provided sufficient reasons for discrediting Dr. Danielyan's opinion as her treatment notes revealed normal findings on multiple examinations and the treatment for Gerard's reported pain and tenderness was essentially routine and conservative.

The ALJ concluded that Gerard had the RFC to perform "the full range of light work." (Tr. 17.) Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Jobs considered light work require "a good deal" of walking or standing or if it involves sitting most of the time with "some pushing and pulling of arm or leg controls." *Id.*

In reviewing Gerard's activities of daily living, the ALJ noted Gerard is able to: prepare meals three nights per week for himself and his uncle, clean his house, do laundry, perform limited yard work, shop for groceries thirty minutes per week, handle a savings account, use a checkbook, watch television, solve word puzzles, play board games with others, and work on lawn mowers. (Tr. 20, referring to the Function Report at Tr. 265-269.) At the hearing, Gerard testified that: he occasionally shops for groceries with his girlfriend, he performs some household chores, and his ability to perform yard work is limited. (Tr. 118-19.) Gerard stated that kids had been mowing his lawn since early 2013 because "they like playing [on] the lawnmower." *Id*. at 118. Gerard added that he "can actually cut with the. . .riding mower, but when [he] get[s] the trimmer out ... [he] can't bend like that." *Id*.

The ALJ stated that he was according "some weight" to the opinion of the non-examining state agency physician, Dr. Smith.   On January 16, 2013, Dr. Smith expressed the opinion that Gerard was capable of performing light work, and had the additional postural limitations of only occasional climbing ramps or stairs; climbing ladders, ropes, or scaffolds; balancing; stooping; kneeling; crouching; and crawling.   (Tr. 138-39.)   The ALJ indicated that he agreed with Dr. Smith's exertional limitations, but found that the record failed to support the postural limitations cited by Dr. Smith and noted that Gerard was able to "perform a number of daily activities."   (Tr. 20.)

The Court finds that the ALJ properly considered the opinion of Dr. Smith.   As a state agency physician, Dr. Smith is a highly qualified expert in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).   Although Gerard asserts that Dr. Smith's opinion is entitled to less weight because it was provided prior to some of the medical evidence, "Plaintiff does not provide, and the Court is not aware of, any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records." *Barker v. Colvin*, No. 14–0900–CV–W–ODS–SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015).   "Indeed, such a timeline is not uncommon in the context of review as claimants will update their medical records and other evidence of record throughout the course of the pendency of their claim and the medical or psychological consultant will necessarily review the file as it is at a certain point in time."   *Ward v. Berryhill*, No. 1:15-CV-00225-NCC, 2017 WL 476403, at * 5 (E.D. Mo. Feb. 6, 2017).

The ALJ also provided a sufficient explanation for declining to include the postural limitations found by Dr. Smith in noting that Gerard was able to perform a wide range of daily

activities.   *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (stating "if a doctor evaluates a patient as having more physical limitations than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistency.") (citations omitted).

The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations.   20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination.   *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir. 2001); *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000).[9]   An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand.   *Hutsell,* 259 F.3d at 712.   Moreover, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."   *Martise,* 641 F.3d 909, 927 (8th Cir. 2011).

In this case, the RFC formulated by the ALJ is supported by substantial evidence in the record as a whole.   The ALJ did not rely on the opinion of Dr. Smith alone.   He considered Dr.

_____

[9]Although an RFC must be based upon "some medical evidence," there is no requirement that the RFC align with, or be based upon, a specific medical opinion of record.   *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (observing that ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians); *Halverson v. Astrue*, 600 F.3d 922, 933-34 (8th Cir. 2010) (holding that medical opinion evidence was not necessary to support the RFC where the ALJ considered the medical records, the claimant's statements, and other evidence in making the RFC determination); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (even though RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner).   The ALJ is required to rely upon medical evidence, but not medical opinion evidence.   *See Martise*, 641 F.3d at 927.

Danielyan's records, which consistently noted no sensory loss or motor weakness, normal range of motion, and a normal gait.   (Tr. 338, 354, 357, 366.)   The second MRI of the cervical spine Gerard underwent in April 2014, after Gerard suffered a fall at home, did reveal findings including mild central spinal canal stenosis and foraminal encroachment.   (Tr. 369.)   At Gerard's March 2014 visit with Dr. Danielyan, the month prior to the MRI, Dr. Danielyan found that Gerard's gait was normal; he was able to heel-and-toe-walk normal; he had no spinal tenderness; and he had no restriction on flexion, extension, lateral bending, or lateral rotation.   (Tr. 366.)   These findings on examination support the ALJ's finding that, despite his musculoskeletal impairments, Gerard is capable of performing light work.   *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was 'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand, and walk and the amount of weight she can carry"); *Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (finding that physicians' observations that the claimant had normal muscle strength and mobility constituted medical evidence supporting the ALJ's conclusion that the claimant could lift 20 pounds occasionally and 10 pounds frequently).

The ALJ thoroughly considered Gerard's complaints in making his credibility determination, noting:

> With regard to the allegations, [Gerard] complained during his treatment in April 2012 of lower back pain that radiated to his right thigh [ ].   The pain originated from a fall that occurred while working in January 1980.   The symptoms were aggravated by ascending and descending stairs, bending, changing positions, daily activities, extension, flexion, lifting, and lying/rest.   He testified that his limited to sitting for 30-45 minutes at a time, standing for 10-15 minutes at a time, and walking 10 minutes at a time due to neck and back pain, and occasional gout.   He stated in his function report that he has trouble dressing, bathing, and using the toilet [ ].   Overall, he has trouble with lifting, standing, walking, sitting, squatting, bending, kneeling, climbing

stairs, reaching using his hands, and completing tasks [ ].

(Tr. 18.)   After careful consideration of the evidence, the ALJ found Gerard's:

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . .

*Id.*

The ALJ also considered factors detracting from Gerard's credibility when determining his RFC.   For example, the ALJ noted that there were significant gaps in Gerard's treatment with Dr. Danielyan, including January to May 2013, and August 2013 to March 2014.   (Tr. 19.)   He stated that, although Gerard has received medical treatment for his impairments, that treatment has been essentially routine or conservative in nature.   *Id.*   It is true that significant gaps in treatment can undermine a claimant's credibility.   *Mouser v. Astrue,* 545 F.3d 634, 638 (8th Cir. 2008).

In a similar vein, Gerard's history of seeking conservative treatment is consistent with the ALJ's finding that Gerard has the RFC to perform the full range of light work. The Eighth Circuit has considered a patient's history of obtaining conservative treatment when evaluating his or her subjective complaints of disabling pain or symptoms.   *Kamann v. Colvin*, 721 F.3d 945, 950–51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged"); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative treatment and no surgery is consistent with discrediting the claimant).   The record shows that Gerard sought treatment for his neck and back pain infrequently.   Specifically, Gerard was treated by Dr. Danielyan seven times in two years.   He cited back pain during his first visit (April 13, 2012); moderate neck pain for the next five visits,

one of which included a report of back pain (on August 29, 2013); and increased neck pain[10] during the last visit following a fall at home in early March 2014.   This record is inconsistent with his allegations of disabling back pain since October 15, 2012.

The ALJ also noted that Gerard had no earnings during 1998-2000, and 2003-2013; and he earned only $1,285 in 2001 and $3,474 in 2002.   (Tr. 20, 247-51.)   The ALJ accurately stated that the fact that Gerard worked only sporadically prior to his alleged onset of disability detracts from the credibility of his complaints.   *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (claimant's credibility lessened when considering sporadic work record reflecting relatively low earnings and multiple years with no reported earnings).   In addition, Gerard testified at the hearing that he quit his last job stuffing envelopes only because he did not get paid.   (Tr. 109-10.) *See Medhaug v. Astrue*, 578 F.3d 805, 816-17 (8th Cir. 2009) (it is relevant to a claimant's credibility that she stopped working for reasons other than her medical condition).

The Court finds that the ALJ's RFC determination is supported by substantial evidence in the record, including the medical evidence and Gerard's testimony regarding his limitations.   The ALJ accounted for Gerard's complaints of chronic pain in limiting him to light work.

## 2.    Step Five Determination

Gerard also argues that the ALJ erred in relying upon the Medical-Vocational Guidelines at step five without eliciting the testimony of a vocational expert ("VE").   Gerard contends that the ALJ failed to consider how Gerard's pain and other limitations would affect his RFC.

"If nonexertional impairments exist that limit the claimant's ability to perform the *full range* of work in a particular category, then the ALJ cannot rely exclusively on the grids to

---

[10]Gerard's Disability Report did not include neck pain as a physical condition limiting his ability to work.   (Tr. 257.)   The ALJ, nevertheless, found that Gerard had the severe impairment of degenerative disc disease of the cervical spine.   (Tr. 16.)

determine disability but must consider vocational expert testimony." *Frankl v. Shalala,* 47 F.3d 935, 937 (8th Cir. 1995) (emphasis added).   On the other hand, "[i]f the claimant's characteristics *do not differ significantly* from those contemplated in the Medical–Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled." *Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir. 1997) (emphasis added).   *See also Reynolds v. Chater,* 82 F.3d 254, 258-59 (8th Cir. 1996) ("Where [ ] the ALJ properly discredits the claimant's complaint of a nonexertional impairment, the ALJ is not required to consult with a vocational expert and may properly rely on the vocational guidelines at step five.").   Moreover, "'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" *Lucy,* 113 F.3d at 908 (quoting *Thompson v. Bowen,* 850 F.2d 346, 349-50 (8th Cir. 1988)).

In this case, the ALJ discredited Gerard's allegations regarding the severity of his pain. Pain itself is a symptom, not a medically determinable impairment.   *See* 20 C.F.R. § 416.969a(a); SSR96-4p ("No symptoms or combination of symptoms by itself can constitute a medically determinable impairment.).   The proper issue for consideration is whether Gerard's pain resulted in nonexertional limitations significantly limiting his ability to perform the full range of light work.   *See Ellis v. Barnhart,* 392 F.3d 988, 996 (8th Cir. 2005) (finding that the ALJ properly discredited the claimant's allegations of the severity of pain and found that the claimant's pain did not diminish his ability to perform the full range of sedentary work).

Gerard does not challenge the ALJ's credibility analysis and the undersigned finds that it is based on substantial evidence.   The Court has also found that the ALJ's RFC determination is based on substantial evidence.   Because the ALJ found that Gerard had no significant

nonexertional limitations and was thus capable of the full range of light work, the Court finds that the ALJ was not required to obtain the testimony of a VE to determine whether there is work that Gerard can perform.   *See Lucy,* 113 F.3d at 908; *Reynolds,* 82 F.3d at 258-59.   The Court further finds that the ALJ's reliance upon the Guidelines is supported by substantial evidence and that it is consistent with the Regulations and case law.

## Conclusion

For all of the foregoing reasons, Gerard's allegations that the ALJ erred are unavailing. The Commissioner's decision is supported by substantial evidence on the record as a whole, and should therefore be affirmed.   Reversal is not required where "substantial evidence exists in the record that would have supported a contrary outcome," or because the case could have been decided differently.   *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citations omitted). Gerard was afforded a full and fair opportunity to present his claims, and the ALJ's ultimate decision did not fall outside the available "zone of choice."   *Hacker*, 459 F.3d at 936.   It must therefore be affirmed.   Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

Dated:   <u>March 31, 2017</u>

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE